## HULL v. SEABOARD AIR LINE RY.

1. Evidence—Juror.—In an action against a railroad company for negligent killing by falling in of trestle, a juror who tried another case against same defendant for the wrongful death of another person in the same catastrophe, and who examined the trestle in charge of the Court as a juror in that case, may testify as to the condition in which he found the timbers of the trestle at the time of his examination.

2. CHARGE.—Refusal to charge one cannot be guilty of wantonness, or wilfulness unless he has been guilty of misconduct or malice or some act from which these ought to be inferred, is not prejudicial to appellant under the general charge.

3. CONSTITUTION.—SEC. 1852, OF CODE OF 1902, permitting exemplary damages in action for negligent killing, when the wrongful act, neglect or default was the result of recklessness, wilfulness or malice, does not deprive one committing such act of his property without due process of law.

Before KLUGH, J., York, April Term, 1906.    Affirmed.

Action by J. O. Hull administrator *de bonis non* of Anne S. McManus against Seaboard Air Line Ry.    From judgment for plaintiff, defendant appeals.

*Messrs. J. L. Glenn* and *W. B. McCaw,* for appellant.

*Mr. Glenn* cites :    *Malice is essential to recovery for punitive damages:* 54 S. C., 507; 2 Suth. on Dam., 1093; 69 S. C., 444; 60 S. C., 57; 29 Ted. R., 238; 91 U. S., 374; 12 Ency., 23.    *As to the constitutionality of the amendment to the statute permitting punitive damages:* 53 S. C., 456; 60 S. C., 413, 72.

*Mr. McCaw* cites : *Punitive damages are only allowed where there is misconduct or malice:* 2 Suth. on Dam., 1073; 69 S. C., 444; 60 S. C., 74; 16 Ency., 392, 395; 54 S. C., 505; 62 S. C., 335; 72 S. C., 355.

*Messrs. Wilson* and *Wilson,* contra, cite :    *Law as to punitive damages was correctly stated:* 54 S. C., 508; 16 Ency., 392, 395; 60 S. C., 73; 65 S. C., 329; 61 S. C., 189; 66 S. C., 541; 67 S. C., 219.    *Master is responsible for wilful tort of servant:* 50 S. C., 48; 61 S. C., 176; 68 S. C., 89; *Dagnal* v. *Ry.    Amendment to act permitting exemplary damages is constitutional:* 12 Ency., 7; 2 Green. Ev., 235, 323, 253; 2 Ency., 323, 456, 455; 91 U. S., 492; 115 U. S.,

512; 66 L. R. A., 649; 63 Miss., 291; 17 L. R. A., 71; 1
L. R. A., 804; 56 L. R. A., 193; 215 Ill., 47; 53 N. H., 342;
65 S. C., 1.  *Punitive damages are given as vindication of
private right: Dagnall* v. *Ry.,* 60 S. C., 56; 62 S. C., 330;
*Oliver* v. *Ry.,* 65 S. C.; 65 S. C., 127; *Miller* v. *Ry.*

March 9, 1907.  The opinion of the Court was delivered
by

MR. JUSTICE GARY.  This is an action for damages,
alleged to have been sustained as a result of the negligent,
wilful, reckless and wanton conduct of the defendant, caus-
ing the death of plaintiff's intestate.

The complaint alleges that Mrs. Annie E. McManus,
being a passenger on defendant's train, came to her death
in the following manner: that when the train was passing
over the trestle near Catawba River, the trestle gave way
and the coach in which she was traveling, as well as the
entire train, fell to the ground; that very shortly after the
falling of said train and before she could be extricated from
the wreck, a freight train running at a rapid rate of speed,
ran into the wreck and killed her.  It was alleged that the
trestle was rotten and insecure; that the freight train was
running too close behind the passenger train; that the crew
of the freight train failed to keep a proper lookout, and
that there was a failure to flag the freight train.

The defendant denied the material allegations of the com-
plaint.

The jury rendered a verdict in favor of the plaintiff for
$25,000, and the defendant appealed.

The first question that will be considered is, whether his
Honor, the presiding Judge, erred in permitting witnesses
to testify as to the condition of the timber in the trestle
where the accident occurred, at the date of their
visit; when these witnesses, who were members of
the jury empannelled to try the case of Waverly
Fairman against the defendant, as a part of the duties im-

posed by the Court on the jury in that case, visited the structure as a jury in charge of the Court.

The ruling of the presiding Judge was as follows: "It may be that the testimony loses somewhat of its value, by reason of the time between the occurrence of the act, and the time the witness saw it; but it is perfectly competent for him to state what he saw, by his own examination of it, so far as that might throw light on the question at issue now. The mere fact that he was a sworn member of the jury wouldn't change it. It is perfectly competent for one of those jurors there, if he knows anything about this thing, to be called from the jury box, sworn as a witness and give his testimony for what he knows about the case; and the mere fact that he made the examination while he was a sworn juror wouldn't render his examination less accurate or less competent. The result of his examination is as competent in all other respects as if he made it as a private individual. It may go to the jury as having been an inspection made some months after the casualty. I think the testimony is perfectly competent."

The reasons assigned by the presiding Judge are satisfactory to this Court, and his ruling is sustained by the case of *State* v. *Vari,* 35 S. C., 175, 14 S. E., 392.

The second assignment of error is that the presiding Judge erred in refusing to charge the following request: "I charge you, as a matter of law, that it is the settled law of this State, that it takes more than negligence, and also more than gross negligence, to make out a case of wilfulness or wantonness. One cannot be said to be guilty of wilfulness or wantonness, unless he has been guilty of misconduct and malice, or of some act from which misconduct and malice ought to be inferred."

The Circuit Judge charged the first sentence, but refused to charge the second. Each of the words, wantonness, wilfulness and recklessness, embodies the element of malice, either express or implied, and are in law substantially the equivalent of each other, in so far as they give rise to an

action based upon punitive damages. *Pickett* v. *R. R.,* 69 S. C., 445, 48 S. E., 466. The presiding Judge charged the jury explicitly that the plaintiff did not have the right to recover punitive damages unless there was wantonness, recklessness or wilfulness, and while he might very properly have charged the entire request, we are unable to discover wherein his refusal was prejudicial to the appellant. This exception and those presenting similar questions are overruled.

The next error assigned is because the presiding Judge refused the following request: "This action having been brought under section 2852, volume 1, of the Code of Laws of South Carolina (XXIII. Stat., page 1071), the question of exemplary or punitive damages will not and cannot be submitted to you, inasmuch as so much of said statute as allows exemplary or punitive damages contravenes the Constitution of this State and the Constitution of the United States, in that it deprives the defendant of its property without due process of law." That section provides that in "every such action the jury may give such damages, *including exemplary damages, where such wrongful act, neglect or default was the result of recklessness, wilfulness or malice,* as they may think proportioned to the injury resulting from such death to the parties respectively, for whom and for whose benefit such action shall be brought."

Before the section was amended by adding the words italicized, punitive damages for a wrongful act causing death, were not recoverable in this State. *Garrick* v. *R. R.,* 53 S. C., 448, 31 S. E., 334.

The appellant's attorneys contend that exemplary damages cannot be proportioned to the *injury* resulting from the death of the party as the *injury* was to the deceased, and not to the persons for whose benefit the action was brought. Their reasons for this proposition are thus stated in their argument: "Punitive damages being only authorized in this State in vindication of a right wrongfully invaded, it is

impossible to conceive how a jury could be authorized to give to these beneficiaries certain amounts in vindication of some right, which they did not have. Their rights were not unlawfully invaded when the death of the deceased was brought about. It was the right of the deceased that was unlawfully invaded, and here we think the provisions of both the State and national Constitution have been invaded. If the amendment to the statute is upheld, then it gives to one man punitive or exemplary damages, for the invasion of another man's legal rights. In other words, if the railroad company is made to pay money to one man by way of punitive damages, for its unlawful invasion of the rights of another man, does this not deprive it of its property without due process of law? The right of action to the beneficiaries under Lord Campbell's Act does not accrue even under the statute, until the death of the party who loses his life, and the right of action is only for compensation in the full sense of the word for his death. The beneficiaries cannot recover for the pain and suffering of the deceased, or for any wrong done to him."

There would be much force in this reasoning, if punitive damages could only be recovered by those who were dependent upon the deceased for support, or by those who had suffered a pecuniary loss. But it is not essential, even to a recovery of compenastory damages, that the person for whose benefit the action is brought, should be dependent upon the deceased for support, or that they should suffer pecuniary loss. *Barksdale* v. *R. R., ante,* 183.

"Exemplary or punitive damages go to the plaintiff, not as a fine or penalty for a public wrong, but in vindication of a private right, which has been wilfully invaded; and indeed it may be said that such damages, in a measure, compensate or satisfy for the wilfulness with which the private right was invaded, but in addition thereto operates as a deterring punishment to the wrongdoer, and as a warning to others." *Watts* v. *R. R. Co.,* 60 S. C., 73, 38 S. E., 240; *Brasington* v. *R. R.,* 62 S. C., 325, 40 S. E., 665; *Dagnall* v. *R. R.,* 69

S. C., 110, 48 S. E., 97; *Duckett* v. *Pool,* 34 S. C., 311, 13 S. E., 542.

"The plaintiff is as much entitled to the damages arising from an act of intentional wrong, as to those growing out of a negligence." *Griffin* v. *R. R.,* 65 S. C., 122, 43 S. E., 445.

"In an action for a wilful tort, the jury has the right to take into consideration, two elements of damages: 1st. Compensation for the injury sustained, as to which the plaintiff is confined to the recovery of such damages as flow naturally and proximately from the wrongful act; and 2d. The conduct of the defendant, for which the plaintiff is entitled to recover exemplary damages, sometimes called punitive or vindictive damages. The exemplary damages are in addition to the compensatory damages." *Pickens* v. *R. R.,* 35 S. C., 498, 506, 32 S. E., 567.

These authorities show that the exceptions raising this question must be overruled.

The last assignment of error is because the presiding Judge refused the motion for a new trial. But the appellant's attorneys admit that it was based upon grounds presented in the other exceptions, which have been considered.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.